```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
JAMELL MCCREE,                                               :
                                                             :
                              Plaintiff,                     :
                                                             :
              -v-                                            :        14-CV-5201 (JPO)
                                                             :
                                                             :        OPINION AND ORDER
C.O. MESSINA, CAPT. T. DIAZ, DEPUTY                          :
WARDEN C. LEMON, WARDEN COOPER,                              :
and CITY N.Y.C.,                                             :
                                                             :
                              Defendants.                    :
-------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

Plaintiff Jamell McCree ("McCree" or "Plaintiff"), proceeding pro se, brings this action alleging that he was subjected to unconstitutional conditions of confinement while he was in custody at the Otis Bantum Correctional Center ("OBCC") on Rikers Island. McCree's lawsuit names various correctional officers and the City of New York (collectively, "Defendants"). Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is granted.

I.  Background[1]

   A.  Facts

According to the amended complaint, McCree and 49 other inmates in the 1-North Annex of OBCC were exposed to large pools of human waste for approximately eleven hours on March 10, 2014. (Dkt. No. 26 ("Am. Compl.") ¶¶ II(A)-(D), V.) McCree alleges that the "pipes all around the tier regurgitated human waste," which "engulfed the bottom tiers along with [a]

---

[1] The following facts are taken from the allegations in the amended complaint, which are accepted as true for purposes of this motion.

1

section at the top tier as well." (*Id.* ¶ V.)  McCree was served lunch and dinner amid these conditions.  (*Id.* ¶¶ II(D), V.)

Correction Officer ("C.O.") Messina, the 7-3 shift[2] officer, "made no effort" to remove McCree or the inmates from the situation or report the incident.  (*Id.* ¶ V.)  If Messina had "reacted accordingly," the inmates would "probably [have] been removed in a timely manner."  (*Id.*)  The inmates were not actually evacuated from the tier until 7:30 p.m., after being exposed to the pools of waste for "11 hours or more."  (*Id.*)  This was the third time the pipes malfunctioned, although the first two incidents were not as severe.  (*Id.*)  Had OBCC's maintenance staff rectified the problem the first time, the incident on March 10, 2014, would never have occurred.  (*Id.*)  McCree filed a grievance at OBCC with a claim of an "environmental health hazard," but it was unsubstantiated by Warden Cooper "due to officer Messina['s] failure to log it in his book."  (*Id.* ¶ IV(E)(1)-(2).)  McCree seeks $875,000 for the asserted violation of his civil and human rights, and also for his pain and suffering.  (*Id.* ¶ V.)

B. **Procedural History**

McCree filed his initial complaint under 42 U.S.C. § 1983 on July 8, 2014, against C.O. Messina ("Messina"), Captain Jane Doe, Deputy John Doe, Warden Cooper ("Cooper"), and Maintenance (presumably the maintenance department at OBCC).  (Dkt. No. 1.)  Cooper filed an answer to the initial complaint on December 15, 2014, and also explained that "C.O. Gary Messina died tragically on July 30, 2014."  (Dkt. No. 15, at 1 n.1.)  In light of Messina's death, Magistrate Judge Dolinger ordered McCree to move for a substitution no later than April 13, 2015, if he wished to pursue his claim against Messina.  (Dkt. No. 27, at 2.)  Judge Dolinger

---

[2] The Court interprets this to mean that Messina's shift ran from 7:00 a.m. to 3:00 p.m. on the day in question.

advised McCree that, in light of his pro se status, a letter expressing a clear desire to replace Messina as a defendant with an appropriate substitute would be sufficient for the purpose of tolling the 90-day window for substitution contemplated by Rule 25 of the Federal Rules of Civil Procedure.  (*Id*.)  McCree did not move for a substitution by the deadline.

McCree filed an amended complaint on February 17, 2015, substituting defendant Captain T. Diaz ("Diaz") for Captain Jane Doe and Deputy Warden C. Lemon ("Lemon") for Deputy John Doe, dropping the claim against Maintenance, and adding New York City as a defendant.  (Am. Compl.)  Defendants Diaz, Lemon, and Cooper moved to dismiss the amended complaint in its entirety on May 11, 2015.  (Dkt. No. 29.)  On June 8, 2015, when no opposition papers had been filed, the Court advised McCree that his papers were to be filed on or before June 29, 2015 if he wished to oppose the motion to dismiss.  (Dkt. No. 32.)  The Court has not received any papers from McCree to date, and accordingly must decide the motion without the benefit of an opposition.

## II.     Discussion

### A.     Legal Standards

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 392 (2d Cir. 2008) (internal quotation marks omitted).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court will not consider mere conclusory allegations that lack a factual basis.

*Hayden v. Paterson*, 594 F.3d 150, 160-61 (2d Cir. 2010).  A plaintiff's complaint "must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed."  *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 680) (alterations and internal quotation marks omitted).

A complaint filed pro se "must be construed liberally to raise the strongest arguments it suggests."  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets and internal quotation marks omitted).  "[A] *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted).  However, a pro se litigant must nonetheless "plead facts sufficient to state a claim to relief that is plausible on its face."  *Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).

  **B. Claim Concerning Conditions of Confinement**

Section 1983 imposes liability on individuals who, while acting under the color of state law, violate an individual's federally protected rights.  *Johnson v. Bendheim*, 00 Civ. 720 (JSR), 2001 WL 799569 at *5 (S.D.N.Y. July 13, 2001) (citing *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)).  A § 1983 suit may give rise to liability on the basis of conditions of confinement when a prisoner or pretrial detainee[3] alleges that the defendant—ordinarily a corrections official—"was deliberately indifferent to a substantial risk of serious harm to him."  *D'Attore v.*

---

[3] The Eighth Amendment, as incorporated against the states through the Fourteenth Amendment, applies to claims arising from the conditions of confinement of convicted prisoners.  *See Caiozzo v. Koreman*, 581 F.3d 63, 69 & n.3 (2d Cir. 2009).  In the case of a pretrial detainee, the Due Process Clause of the Fourteenth Amendment applies to such claims.  *Id.* at 69.  The complaint does not set out McCree's status, but the same substantive standard applies in either circumstance.  *See Hernandez v. Corizone Med. Dep't Staff*, No. 14 Civ. 192 (JPO), 2015 WL 273690, at *2 n.6 (S.D.N.Y. Jan. 22, 2015) (citing *Caiozzo*, 581 F.3d at 72).

4

*New York City*, No. 10 Civ. 3102 (JSR), 2015 WL 556778, at *9 (S.D.N.Y. Feb. 10, 2015). Such a claim must therefore meet two requirements: (1) the alleged deprivation must, as an objective matter, be "sufficiently serious that he was denied the minimal civilized measure of life's necessities," *Walker*, 717 F.3d at 125 (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)), and (2) the alleged perpetrator must possess a "sufficiently culpable state of mind," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In the context of correctional conditions, courts have characterized this state of mind as "deliberate indifference" to the health and safety of inmates. *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)) (applying deliberate indifference standard to conditions of confinement claim).

### 1. Sufficiently Serious Deprivation

The Second Circuit has stated that exposure to human waste, under certain conditions, might be sufficiently serious to give rise to an Eighth Amendment claim. *See Gaston v. Coughlin*, 249 F.3d 156, 165-66 (2d Cir. 2001) (reinstating an inmate's Eighth Amendment claim where, *inter alia*, the area in front of his cell "was filled with human feces, urine, and sewage water" for several days, and stating that the court would not rule out a constitutional claim where "prison officials knowingly [] allow an area to remain filled with sewage and excrement for days on end"); *LaReau v. MacDougall*, 473 F.2d 974, 977-79 (2d Cir. 1972) (holding that an inmate held for five days in a "strip cell"—which, *inter alia*, contained only a grate-covered hole in the floor for a toilet that could only be flushed from the outside—was deprived of his Eighth Amendment rights).

However, the weight of authority in this district holds that when "exposure to [human] waste is intermittent or limited to a matter of hours, courts normally will not entertain" actions

5

alleging unconstitutional conditions of confinement. *Ortiz v. Dep't of Corr.*, No. 08 Civ. 2195 (RJS) (HBP), 2011 WL 2638137, at *7 (S.D.N.Y. Apr. 29, 2011) (collecting cases that rejected Eighth Amendment claims where exposure to waste lasted for 24 hours or less), *report & rec. adopted*, 2011 WL 2638140 (S.D.N.Y. July 5, 2011). In *Myers v. City of New York*, the court considered allegations that a pretrial detainee was confined for approximately sixteen hours in a cell where the only place to sit was on "a urine and filth laden floor." No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *7 (S.D.N.Y. Aug. 29, 2012). The court recognized that a detainee "may state a claim for unconstitutionally unsanitary conditions" if he is "housed for a sustained period of time in filthy conditions." *Id.* However, the court held, "[d]iscomfort of this short duration"—sixteen hours in the holding cell—"does not rise to the level of a constitutional violation." *Id.* The Second Circuit affirmed by summary order. *Myers v. City of New York*, 529 F. App'x 105 (2d Cir. 2013) (summary order).

Other courts in this district have reached the same result in cases involving similar allegations. *See, e.g.*, *Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 490-91 (S.D.N.Y. 2014) (rejecting claims regarding "confinement for several hours . . . in cells that flooded with sewage" as not sufficiently serious); *Mena v. City of New York*, No. 12 Civ. 28 (CM), 2014 WL 2968513, at *10 (S.D.N.Y. June 27, 2014) (deeming "exposure to human waste in the Rikers Island intake cell" to be "too brief to constitute a constitutional violation" where the plaintiff alleged that he was "kept for thirteen hours in an intake cell with a large pool of urine on the floor"); *Florio v. Canty*, 954 F. Supp. 2d 227, 235 (S.D.N.Y. 2013) (rejecting claim where plaintiff "was exposed to waste only for brief periods" and "his total exposure was less than a few hours"). In light of this precedent, the approximately eleven-hour period during which McCree was allegedly exposed to the pools of waste is insufficient in duration to constitute a sufficiently serious

6

deprivation of the "minimal civilized measure of life's necessities." *See Walker*, 717 F.3d at 125. Accordingly, McCree's pleadings fail to establish this element of a § 1983 claim for unconstitutional conditions of confinement.

### 2. Defendants' State of Mind and Personal Involvement

As for the second element of an unconstitutional conditions of confinement claim, namely, an accused correction official's subjective intent, "a plaintiff must show something more than mere negligence." *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). Instead, "[a] prisoner injured while in custody may recover for violation of his [constitutional] rights [only] if the injury resulted from the defendant prison official's purposeful subjection of the prisoner to a 'substantial risk of serious harm' or from the official's deliberate indifference to that risk." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (quoting *Farmer*, 511 U.S. at 834). "An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Cuoco*, 222 F.3d at 107 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Additionally, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Personal involvement of a supervisory defendant can be established through evidence that the defendant: (1) participated directly in the alleged constitutional violation, (2) failed to remedy the wrong after being informed of it through a report or appeal, (3) "created a policy or custom under which unconstitutional practices occurred,

or allowed the continuance of such a policy or custom," (4) "was grossly negligent in supervising subordinates who committed the wrongful acts," or (5) "exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Wright*, 21 F.3d at 501).

McCree's amended complaint also fails to establish this element as to any of the remaining defendants. First, the complaint lists Lemon and Diaz as defendants without making any specific allegations against either of them. In particular, McCree does not allege that either Lemon or Diaz purposefully subjected McCree to a substantial risk of serious harm or was deliberately indifferent to such a risk. Similarly, the complaint contains no allegations of Lemon's or Diaz's personal involvement with the conditions about which McCree complained. Supervisory liability in a § 1983 action depends on a showing of some personal responsibility and cannot be solely based on *respondeat superior*. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). "[P]roof of 'linkage in the prison chain of command' is [also] insufficient." *Id*. (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985)). Therefore, McCree's claims against Lemon and Diaz must be dismissed, in the alternative, because the complaint fails to allege either their deliberate indifference or their personal involvement.

As for defendant Cooper, the complaint similarly makes no allegation of his knowledge of the conditions in McCree's tier on March 10, 2014, or of a substantial risk of harm stemming from those conditions. Furthermore, Cooper's "status as warden . . . , standing alone, is . . . insufficient to support a finding of supervisory liability." *Walker v. Schriro*, No. 11 Civ. 9299 (JPO), 2013 WL 1234930, at *15 (S.D.N.Y. Mar. 26, 2013). The complaint's only specific allegation regarding Cooper is that he deemed McCree's grievance unsubstantiated because

Messina failed to log it in his book. "[T]he Court of Appeals and numerous district courts in this Circuit have repeatedly held that receipt of grievance letters is insufficient to impute personal involvement." *Voorhees v. Goord*, No. 05 Civ. 1407 (KMW) (HBP), 2006 WL 1888638, at *5 (S.D.N.Y. Feb. 24, 2006) (alterations and internal quotation marks omitted) (collecting cases), *report & rec. adopted*, No. 05 Civ. 1407, Dkt. No. 27 (S.D.N.Y. Sept. 7, 2006). Similarly, "[b]road, conclusory allegations that a high-ranking defendant was informed of an incident are . . . insufficient." *Gonzalez v. Sarreck*, No. 08 Civ. 3661 (RWS), 2011 WL 5051341, at *14 (S.D.N.Y. Oct. 24, 2011) (citing *Hernandez v. Goord*, 312 F. Supp. 2d 537, 547 (S.D.N.Y. 2004)). In addition, merely "affirming the administrative denial of a prison inmate's grievance . . . is insufficient to establish personal involvement under section 1983." *Manley v. Mazzuca*, No. 01 Civ. 5178 (KMK), 2007 WL 162476, at *10 (S.D.N.Y. Jan. 19, 2007). Therefore, the claim against Cooper must also be dismissed, in the alternative, for failing to allege either the requisite mental state or personal involvement.

Finally, the complaint does allege that Defendant Messina was personally involved in the allegedly unconstitutional actions by his failure to remove McCree and other inmates from the tier after it had flooded with waste. However, as Messina is deceased and McCree failed to replace him with an appropriate substitute within the time limit set out in Judge Dolinger's order, the claim against Messina is dismissed.

### C. Municipal Liability

The complaint is construed to include the City of New York (the "City") as a defendant.[4] "[U]nder § 1983, local governments are responsible only for their *own* illegal acts. They are not

---

[4] The amended complaint includes "City N.Y.C." as a defendant in the caption, but the City is not listed as a defendant in Part I(B). Because pro se pleadings are construed liberally, *see Walker*, 717 F.3d at 124, the Court considers the complaint to contain a claim against the City.

9

vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (citation and internal quotation marks omitted). "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* Liability under § 1983 may also exist "where a municipality's failure to train or supervise its officers amounts to deliberate indifference." *Barone v. United States*, No. 12 Civ. 4103 (LAK), 2014 WL 4467780, at *21 (S.D.N.Y. Sept. 10, 2014).

Thus, a municipality will be held liable for the acts of its employees only where "(1) an official policy or custom . . . (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). "Boilerplate" assertions of an unconstitutional policy do not suffice. *See Matthews v. City of New York*, 889 F. Supp. 2d 418, 445-46 (S.D.N.Y. 2012).

Here, the amended complaint does not allege that any policy or custom of the City was the cause of the conditions on March 10, 2014, nor that those conditions were the result of a widespread practice or of the City's failure to train its officers. Accordingly, even if the complaint stated a claim of unconstitutional conditions of confinement, the claim against the City of New York would be dismissed.

### D.     Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be granted "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Furthermore, "[a] *pro se*

complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (brackets and internal quotation marks omitted).  In light of the conclusion reached above (section II.B.1) that the alleged facts do not rise to the level of an Eighth Amendment violation, the Court concludes that McCree could not amend his complaint to state a valid claim to relief.  Leave to amend is therefore denied.

### III.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of Court is directed to terminate the motion at docket number 29 and to close this case.

SO ORDERED.

Dated:  July 15, 2015
        New York, New York

_____
J. PAUL OETKEN
United States District Judge

COPY MAILED TO PRO SE PARTY